Filed 5/31/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TIMOTHY AGHAJI et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> BANK OF AMERICA, N.A., et al., <br><br> Defendants and Respondents. | B261971 <br><br> (Los Angeles County <br> Super. Ct. No. BC498852 (lead case); and related cases BC498850, BC498978, BC521834, BC521835, GC050583, BC522150, BC522158, BC525203, BC531302, BC531535, BC531639, BC531713, BC531836, BC534708, BC538607, BC539499, BC541862, BC545528, BC545529, BC545705, BC548293) |

APPEAL from a judgment of the Superior Court for Los Angeles County, Amy D. Hogue, Judge. Affirmed.

Real Estate Law Center, Erikson M. Davis; and Ronald D. Tym for Plaintiffs and Appellants.

Bryan Cave, Robert E. Boone, Nafiz Cekirge, and Douglas E. Winter for Defendants and Respondents Bank of America, N.A. (for itself and as successor by merger to BAC Home Loans Servicing LP and Countrywide Bank FSB); Countrywide Financial Corporation; and Countrywide Home Loans, Inc.

Katten Muchin Rosenman, Gregory S. Korman, Tami Kameda Sims and Stuart M. Richter for Defendants and Respondents HSBC Mortgage Services Inc. and HSBC Bank USA, N.A.

Wright Finlay & Zak, Jonathan D. Fink and Magdalena D. Kozinska for Defendants and Respondents Ocwen Financial Corporation and Ocwen Loan Servicing, LLC.

Dykema Gossett, J. Kevin Snyder and Lukas Sosnicki; Bryan Cave, Christopher L. Dueringer and Christina Rea Snider for Defendant and Respondent CIT Bank, N.A. (formerly known as OneWest Bank, N.A.)

Dykema Gossett, J. Kevin Snyder, Lukas Sosnicki and James M. Golden for Defendant and Respondent Nationstar Mortgage LLC.

Severson & Werson, Jan T. Chilton and Kerry W. Franich for Defendant and Respondent Green Tree Servicing LLC.

//
//
//
//
//
//
//
//
//
//
//
//
//

Two-hundred-twenty-two plaintiffs, in 22 related mass actions against various financial institutions and mortgage loan servicers, appeal from an order dismissing those actions after the trial court sustained without leave to amend defendants' demurrers to an "omnibus" third amended complaint.[1]  Plaintiffs are homeowners from all over the country.  Each mass action involves numerous plaintiffs whose loans originated with and/or were serviced by a single defendant or related affiliates.  For example, the defendants in the lead case (*Ahgaji et al. v. Bank of America, N.A., et al.*) are Bank of America, N.A. (Bank of America) and several of its subsidiaries or divisions (Countrywide Financial Corporation and Countrywide Home Loans, Inc. (collectively, Countrywide)) and affiliates or agents (BAC Home Loan Servicing, Recontrust Company, N.A., and CTC Real

---

[1]     The cases, which were related to the lead case, *Aghaji et al. v. Bank of America, N.A., et al.* (L.A.S.C. Case No. BC498852) are as follows:  *Asmussen et al. v. Bank of America, N.A., et al.* (L.A.S.C. Case No. BC498850); *Aguila et al. v. Bank of America, N.A., et al.* (L.A.S.C. Case No. BC498978); *Abeyta et al. v. Ocwen Corp. et al.* (L.A.S.C. Case No. BC521834 [consolidated with *McMullen et al. v. Ocwen Financial Corp. et al.* (L.A.S.C. Case No. BC521835)]; *Allgoewer et al. v. IndyMac Federal Bank, FSB et al.* (L.A.S.C. Case No. GC050583); *Andrews et al. v. OneWest Bank, FSB et al.* (L.A.S.C. Case No. BC522150); *Aguayo et al. v. Bank of America, N.A., et al.* (L.A.S.C. Case No. BC522158); *Alvarez et al. v. HSBC Mortgage Services, Inc. et al.* (L.A.S.C. Case No. BC525203); *Abbott et al. v. Bank of America, N.A., et al.* (L.A.S.C. Case No. BC531302); *Holmes et al. v. Bank of America, N.A., et al.* (L.A.S.C. Case No. BC531535); *Penn et al. v. Bank of America, N.A., et al.* (L.A.S.C. Case No. BC531639); *Marino et al. v. Bank of America, N.A., et al.* (L.A.S.C. Case No. BC531713); *Simons et al. v. Bank of America, N.A., et al.* (L.A.S.C. Case No. BC531836); *Amador et al. v. Nationstar Mortgage, LLC* (L.A.S.C. Case No. BC534708); *Carlisle et al. v. Ocwen Financial Corp. et al.* (L.A.S.C. Case No. BC538607); *Anderson et al. v. Nationstar Mortgage, LLC* (L.A.S.C. Case No. BC539499); *Foster et al. v. Ocwen Financial Corp. et al.* (L.A.S.C. Case No. BC541862); *Allisan et al. v. Ocwen Financial Corp. et al.* (L.A.S.C. Case No. BC545528); *Baker et al. v. Nationstar Mortgage, LLC* (L.A.S.C. Case No. BC545529); *Adams et al. v. Green Tree Servicing LLC* (L.A.S.C. Case No. BC545705); *Butler et al. v. Nationstar Mortgage, LLC* (L.A.S.C. Case No. BC548293). Each case has between 12 and 70 named plaintiffs, and between one and six named defendants.

Estate Services); all 62 of the plaintiffs had home loans that were originated by Bank of America or Countrywide, and those loans were serviced by BAC Home Loan Servicing, Recontrust Company, N.A., or CTC Real Estate Services.

The omnibus complaint asserted seven causes of action (for fraud, conspiracy to commit fraud, conversion, conspiracy to convert, violation of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788, et seq.), unfair business practices (Bus. & Prof. Code, § 17200, et seq.), and unjust enrichment), based almost entirely on allegations that defendants lacked the authority to enforce or service plaintiffs' loans due to the purported failed negotiation of plaintiffs' promissory notes. On appeal, plaintiffs challenge only the trial court's denial of their request for leave to amend their unfair business practices cause of action (the UCL claim) to add factual allegations to support an entirely different theory that was suggested in seven sentences of the 29-page complaint. Plaintiffs fail, however, to show that their proposed additional facts are sufficient to state a UCL claim. Moreover, even if their proposed additional facts were sufficient, they clearly demonstrate that the claim could not be prosecuted as a mass action because the 222 plaintiffs' claims do not arise out of the same transaction or occurrence, as required by Code of Civil Procedure section 378. Therefore, we conclude the trial court did not abuse its discretion by denying plaintiffs leave to amend their complaint.

## BACKGROUND

The securitization of home mortgage loans – which helped to fuel the housing bubble in the late 1990s and early 2000s[2] – was largely ignored by the

---

[2]    See Levitin & Wachter, *Explaining the Housing Bubble* (2012) 100 Geo. L.J. 1177, 1182.

general public until the housing bubble collapsed in 2008. Since that collapse, which resulted in a massive wave of loan defaults and home foreclosures, courts in California (and nationwide) have been inundated with lawsuits by defaulting homeowners seeking to avoid or challenge foreclosures by challenging the assignments of promissory notes and deeds of trust during the securitization process.[3] In essence, the defaulting homeowners allege in those lawsuits that the notes and deeds of trust were not validly assigned at some point in the process of securitization, and therefore the foreclosing party did not have the authority to foreclose.

In or around 2013, a law firm (Real Estate Law Center, PC) began filing a series of "mass action" lawsuits (in Los Angeles Superior Court and, apparently, in other superior courts in California) against various financial institutions or loan servicers, with allegations similar to the wrongful foreclosure cases, but with one critical difference: the homeowners in those lawsuits had not defaulted on their loans and were not challenging foreclosures, but instead challenged the defendants' authority to collect payments on the loans. Initially, the cases filed in the Los

---

[3]     The securitization process typically involves a series of sales of the mortgage loans. As one commentator has explained, although the process can "vary somewhat depending on the type of entity undertaking the securitization, there is still a core standard transaction. First, a financial institution (the 'sponsor' or 'seller') assembles a pool of mortgage loans either made ('originated') by an affiliate of the financial institution or purchased from unaffiliated third-party originators. Second, the pool of loans is sold by the sponsor to a special-purpose subsidiary (the 'depositor') that has no other assets or liabilities and is little more than a legal entity with a mailbox. This is done to segregate the loans from the sponsor's assets and liabilities. Third, the depositor sells the loans to a passive, specially created, single-purpose vehicle (SPV), typically a trust in the case of residential-mortgage securitization. The trustee will then typically convey the mortgage notes and security instruments to a document custodian for safekeeping. The SPV issues certificated debt securities to raise the funds to pay for the loans. As these debt securities are backed by the cash flow from the mortgages, they are called mortgage-backed securities (MBS)." (Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title* (2013) 63 Duke L.J. 637, 671-672, fns. omitted.)

Angeles Superior Court were assigned to different judges, until the judge whose ruling is at issue in this appeal ordered all of the then-pending cases in Los Angeles (which had virtually identical allegations) related to the lead case here (*Aghaji et al. v. Bank of America, N.A., et al.*, L.A. Sup. Ct. Case No. BC498852). The trial court then ordered the law firm to file a single "omnibus" complaint for the related actions.

Plaintiffs' legal theories and alleged injuries had evolved over the many iterations of the complaints in the various actions leading up to the omnibus complaint. At first, the complaints included allegations of loan origination fraud, predatory lending, attempts to disguise defendants' mortgage securitization scheme, predatory loan modification, and fraudulent misuse of Troubled Asset Relief Program (TARP) funds. After demurrers were sustained to the initial complaints, plaintiffs amended the complaints and limited their scope to allegations related to purported defects in the securitization process that they alleged resulted in defendants' loss of ownership of and/or entitlement to service plaintiffs' loans. After demurrers to those first amended complaints were sustained, plaintiffs amended their complaints to add allegations that plaintiffs' promissory notes were not properly negotiated when they were sold as part of the securitization process, and therefore defendants did not have authority to enforce or service plaintiffs' loans. Finally, in the third amended complaint (the omnibus complaint at issue in this appeal), plaintiffs stated what they were, and were not, alleging: "11. Here, Plaintiffs do not dispute any entity's right to securitize the original mortgages at issue herein, nor do Plaintiffs allege that the securitization process itself renders a promissory note null and void or otherwise unenforceable. Further, Plaintiffs are not attempting to 'challenge' any act of securitization. [¶] 12. Plaintiffs simply allege that, as a result of the mass chaos resulting from Plaintiffs' notes and trust deeds having changed hands multiple times since

6

origination, the true owner of each mortgage for each Plaintiff is unclear and very much in dispute due to failed negotiation of the notes involved. As a result, at the very least, Plaintiffs allege, they have been paying to Defendants loan payments for years that Defendants are not legally or contractually entitled to or authorized to be demanding or accepting."

Like the previous complaints, the omnibus third amended complaint included only generalized and conclusory allegations; there were no allegations that were specific to any particular party (other than the description of the parties),[4] nor were there any allegations identifying any specific facts that would support an assertion of any improper negotiation. Although the vast majority of the allegations of the 29-page complaint related to plaintiffs' failed negotiation theory, there were seven sentences that alleged, again in general conclusory terms that did not specifically relate to any plaintiff or defendant, that defendants had not correctly or fully credited payments to the account of the plaintiff making the payments and had charged improper fees and costs.

All of the defendants filed and/or joined in demurrers to the omnibus complaint and each cause of action. The trial court issued a tentative ruling sustaining the demurrers without leave to amend on the ground that plaintiffs lacked standing to challenge the transactions by which the notes and deeds of trust

---

[4] In describing the parties, the omnibus complaint incorporated by reference the party descriptions in the prior complaints. With regard to plaintiffs, all of the prior complaints except one used generic descriptions for each plaintiff, alleging, for example: "Plaintiff [name] is an individual who resides in [place], and this Plaintiff's subject mortgage is secured by the real property located at [address]. During some period of time relevant to this litigation, Defendants have claimed to be the servicers and/or agents of the owners of this home loan, and they have designated it as Loan No. [number]"; or, in the case of later-filed complaints, "Plaintiff [name] is a competent adult. During some period of time relevant to this action, Defendants acted as loan servicer or in some other control capacity regarding this Plaintiff's mortgage loan that Defendants have designated as Loan No. [number]."

7

were transferred. Before the hearing on the demurrers, plaintiffs' counsel filed a declaration in response to the tentative ruling. In addition to challenging some of the trial court's factual statements, counsel responded to the court's finding that the complaint's allegations that defendants failed to properly credit payments and charged improper fees were vague and conclusory. Counsel submitted "examples" of how plaintiffs could amend the complaint to support those allegations, providing some specific facts for 20 plaintiffs (out of more than 850 named plaintiffs) from 13 of the 22 cases at issue in the demurrers, and five plaintiffs from other cases that were related to the lead case but were not included in the demurrer.[5]

At the hearing on the demurrers, the trial court sought to determine which cases would be included in its ruling. The court asked plaintiffs' counsel if he would object to including all of the cases that had been related up to the time of the hearing. Counsel stated that he did object to including any case for which no demurrer (or joinder in a demurrer) had been filed before he had filed plaintiffs' opposition. He explained that he had assumed that he would be allowed to file a new omnibus complaint for the remaining cases. Although the court expressed concern about the burden on the court, it agreed to limit its ruling to the cases in which demurrers or joinders in demurrers had been filed before plaintiffs filed their opposition, and to allow plaintiffs leave to amend to file another omnibus complaint for the remaining cases.[6]

Following the hearing, the trial court issued its written ruling. As in its tentative ruling, the court found that plaintiffs did not have standing to challenge

---

[5] As of April 24, 2015, there were 39 cases in Los Angeles Superior Court that were related to the lead case, but 17 of them were not related in time to be included in the demurrers and thus remain pending in the trial court.

[6] The omnibus complaint at issue here listed 15 cases. The trial court added seven more cases, for a total of 22 cases that were part of its ruling.

alleged defective assignments of their loans.  Addressing plaintiffs' allegation that defendants charged improper fees and failed to credit plaintiffs' loan payments, the court found that, even if it considered the proposed additional facts plaintiffs' counsel proffered, plaintiffs failed to state any cause of action.  With regard to the UCL claim, the court found that plaintiffs failed to show how defendants' actions constitute unfair competition under Business and Professions Code section 17200 because plaintiffs did not cite to any particular law, statute, or regulation they contend defendants violated, and did not show what misrepresentations they relied upon or how members of the public would likely be deceived by defendants' conduct.  Finally, the court found that, after four failed attempts to allege a justiciable action, there was no reasonable possibility that additional amendment would cure the defects, and therefore sustained the demurrers without leave to amend and dismissed all 22 cases at issue.  A timely notice of appeal was filed on behalf of 242 plaintiffs.[7]

## DISCUSSION

We begin with an observation.  At the hearing on the demurrers, when discussing which cases would be included in its order and what would be done with the remaining cases, the trial court noted that a ruling by this court would help to determine how the remaining cases would proceed.  It is surprising, then, that plaintiffs have not raised on appeal any challenge to the trial court's ruling sustaining the demurrers, and limit their challenge to the trial court's denial of leave to amend their UCL claim to assert a claim that is unrelated to the

---

[7]    We note that the appellants opening brief lists only 226 plaintiffs.  After the brief was filed, we received a request for dismissal of the appeal as to five plaintiffs; one of those plaintiffs, however, had not been listed in the brief.  Therefore, there are 222 plaintiffs who are appearing as appellants here.

9

securitization process upon which all of the previous complaints (and the complaints in the related cases that remained) have focused. Even more surprising is plaintiffs' failure to seek leave to file additional briefing in this court to address a Supreme Court opinion that was issued the day plaintiffs filed their reply brief, in which the Supreme Court disapproved the cases the trial court relied upon in finding that plaintiffs had no standing to challenge the purportedly defective assignment of their mortgage loans – the sole ground on which the trial court relied in sustaining the demurrers to the failed negotiation claims. (See *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13 [disapproving *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497; *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256; and *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495].) By limiting its appeal to the denial of leave to amend, plaintiffs have limited our ability to give the trial court (as well as courts in other counties in which plaintiffs' counsel have filed similar mass actions) the guidance it sought.[8]

A.    *The Trial Court did not Abuse its Discretion by Denying Leave to Amend*

As noted, plaintiffs contend on appeal that the trial court abused its discretion in denying leave to amend their UCL claim. They argue they could cure the defect the trial court identified – the failure to cite to any law, statute, or regulation – by alleging that defendants failed to fully credit payments received from plaintiffs and charged improper fees and costs in violation of Regulation X

---

[8]    Defendants Ocwen Financial Corporation and Ocwen Loan Servicing, LLC moved for sanctions against plaintiffs' counsel, arguing that this appeal was filed solely to delay the disposition of plaintiffs' claims and prolong counsel's income stream. We deny the motion.

(12 C.F.R. §§ 1024.35(b), 1024.35(e)) and Regulation Z (12 C.F.R. § 226.36(c)). Plaintiffs' argument falls short, however, in two respects. First, the additional facts that plaintiffs' counsel provided in his declaration are insufficient to state a cause of action on behalf of the few plaintiffs counsel addressed in the declaration, and there have been no facts proffered at all for the vast majority of plaintiffs who are parties to this appeal. Second, even if plaintiffs could provide sufficient facts for each of the 222 plaintiffs in this appeal, plaintiffs' claims are misjoined because they do not "arise[] out of the same transaction, occurrence, or series of transactions or occurrences." (Code Civ. Proc., § 378, subd. (a)(1).)

### 1. *Standard of Review*

When a demurrer is sustained, "the plaintiff must be given leave to amend his or her complaint when there is a reasonable possibility that the defect can be cured by amendment. [Citations.] 'The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.] [¶] 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] The assertion of an abstract right to amend does not satisfy this burden.' [Citation.] The plaintiff must clearly and specifically state 'the legal basis for amendment, i.e., the elements of the cause of action,' as well as the 'factual allegations that sufficiently state all required elements of that cause of action.' [Citation.]" (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 95.)

### 2. *Plaintiffs Have Not Met Their Burden*

In their opening brief, plaintiffs focus entirely on the regulations they assert defendants violated, and do not address the adequacy of the facts they provided to show such violations. In their reply brief, plaintiffs respond to several defendants'

11

assertion that plaintiffs' proffered facts were insufficient because they were conclusory by arguing that "the allegations that (1) Defendants/Respondents had not been crediting loan payments from Plaintiffs/Appellants correctly or fully to the account of each specific Plaintiff/Appellant involved; and (2) Defendants/ Respondents had been charging improper fees, costs and charges to Plaintiffs/Appellants . . . are sufficient ultimate facts to support an allegation of violation of Regulation X and Regulation Z, which in turn is a predicate to the UCL claim based upon the unlawful prong." We disagree.

As Bank of America explained in its respondents' brief, Regulation X, which regulates the manner in which loan servicers must resolve certain errors, is violated only when a servicer receives a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." (12 C.F.R. 1024.35(a).) Thus, at the very least, plaintiffs must allege facts to show that they gave the requisite notices and that defendants failed to properly respond in order to allege violations of Regulation X. Regulation Z, on the other hand, is a regulation under the Truth in Lending Act (15 U.S.C. § 1601, et seq.), which applies only to creditors and their assignees, and expressly exempts loan servicers that have no past or present ownership in the loan at issue. (15 U.S.C. §§ 1602(g), 1641(e); *Marais v. Chase Home Finance LLC* (6th Cir. 2013) 736 F.3d 711, 715-716.) Therefore, to the extent plaintiffs allege any violation of Regulation Z, they must allege facts to show that the defendant at issue is a present or past owner of the home loan at issue.

In addition to alleging facts sufficient to show violations of Regulation X and Regulation Z, plaintiffs who are not California residents must also allege facts to show that the alleged violations occurred within California, because California's

unfair competition law does not apply extraterritorially. (See *Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1207; *Northwest Mortgage, Inc. v. Superior Court* (1999) 72 Cal.App.4th 214, 222-227.) Plaintiffs assert in their appellants' reply brief that "although many of the Defendant servicers are entities formed in states other than California and have their headquarters outside of California, they have processing facilities and personnel in California and, upon information and belief, that is where the misapplied payments were received or that is from where the improper charges or improper crediting of payments occurred with respect to out of state Plaintiffs/Appellants." But plaintiffs' assertion is insufficient for two reasons. First, plaintiffs state that *many* – not all – defendant servicers have facilities and personnel in California, and therefore appear to concede that at least some of the defendants do not. Second, plaintiffs do not disclose what information they have that leads them to believe that the alleged violations occurred in those California facilities. (See *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1158-1159 ["a pleading made on information and belief is insufficient if it 'merely assert[s] the facts so alleged without alleging such information that "lead[s] [the plaintiff] to believe that the allegations are true"'"].)

In short, plaintiffs have not shown that they can truthfully allege facts necessary to allege a violation of Regulation X or Regulation Z in California as to any plaintiff, let alone all plaintiffs. In fact, of the 25 plaintiffs for whom plaintiffs' counsel submitted his declaration of additional facts, only eight are parties to this appeal (two additional plaintiffs from the declaration were listed on the notice of appeal, but are not listed in the appellants' opening brief). There is no reason to believe that each of the remaining 214 plaintiffs has experienced failures to fully credit their mortgage payments and/or purportedly improper fees or charges, especially given that, until the trial court issued its tentative ruling on the demurrers, the focus of all of these mass actions from the beginning has been on

13

asserted defects in the securitization process rather than improper crediting or charges.

### 3. *Plaintiffs' Claims are Misjoined*

While plaintiffs' counsel's declaration failed to show that plaintiffs could allege facts sufficient to state a UCL claim, it provided indisputable proof that plaintiffs' claims are misjoined, which presents further support for the denial of leave to amend.[9]

Under Code of Civil Procedure section 378 (section 378), plaintiffs may join in one action if "[t]hey assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." (§ 378, subd. (a)(1).) Defendants have argued since the start of these cases that plaintiffs were improperly joined because each plaintiff's claims arose out a distinct loan transaction, secured by a distinct property, that went through a distinct securitization process. At that time, the trial court declined to find improper joinder because it did not believe it had a reason to suspect that the transactions were very different from one another. (But see *Visendi v. Bank of America, N.A.* (9th Cir. 2013) 733 F.3d 863, 870 [finding misjoinder under Fed. R. Civ. P. 20 in case involving allegations of invalid assignment of mortgages, noting that "Plaintiffs own separate and unrelated properties across the country, they entered into separate loan transactions, and their

---

[9] The issue of misjoinder was raised by several of the defendants in their demurrers, but the trial court did not sustain the demurrers on that basis. Those defendants also raised the issue in their respondents' brief. In their reply brief, plaintiffs argue that defendants waived the issue by not filing a cross-appeal. Plaintiffs are mistaken. Misjoinder is relevant to the question whether plaintiffs can amend the complaint to state a cause of action; if, as we conclude, plaintiffs' claims are improperly joined, then the answer to that question is that they cannot.

dealings with Defendants were necessarily varied.  Nothing unites all of these Plaintiffs but the superficial similarity of their allegations and their common choice of counsel.  Further, the three claims that Plaintiffs now assert – invalid assignment, mistake, and negligence – each require particularized factual analysis.  Plaintiffs merely allege that Defendants violated the same laws in comparable ways.  Rule 20(a) requires more"].)

Even if it was unclear at the early stages of these cases that plaintiffs' claims arose from distinct transactions presenting different issues of fact, plaintiffs' counsel's declaration removes any doubt.  Each of the plaintiffs counsel addressed had unique transactions or experiences giving rise to their alleged claims.  For example, plaintiff Isabel Felix alleged that Bank of America added fees, interest, and other charges to her principal balance when it acted as servicer of her loan, while plaintiff Clifton Hunter alleged that Ocwen sent him a letter stating that it was sending a representative to his rental property to change the locks and winterize the property, charged him for additional insurance on the property when it was not needed, and sent a man to break into the property when no one was there.  Plaintiff Joseph Rankin, on the other hand, alleged that Bank of America issued mortgage interest statements that under-reported the amount of mortgage he paid, and plaintiff Fernando Burgos alleged that Nationstar charged him more than was agreed to in a loan modification agreement.  Each of these claims clearly arises from a different transaction or occurrence and presents distinct questions of law or fact.  Therefore, even if plaintiffs presented sufficient facts to state valid UCL claims (which they did not), they could not be presented in a joint action under section 378.

15

**DISPOSITION**

The judgment is affirmed.  Respondents shall recover their costs on appeal.

**CERTIFIED FOR PUBLICATION**


WILLHITE, Acting P. J.


We concur:



MANELLA, J.



BOREN, J.*

---

*Associate Justice of the Court of Appeal, Second Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.