[No. D060710. Fourth Dist., Div. One. Oct. 29, 2012.]

SEE'S CANDY SHOPS, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
PAMELA SILVA, Real Party in Interest.

**COUNSEL**

Jackson Lewis, David S. Bradshaw, James T. Jones, Alison J. Cubre and Paul F. Sorrentino for Petitioner.

Ogletree, Deakins, Nash, Smoak & Stewart, Jack S. Sholkoff; and Luke A. Wake for National Federation of Independent Businesses Small Business Legal Center as Amicus Curiae on behalf of Petitioner.

Seyfarth Shaw, Jeffrey A. Berman, James M. Harris and Kerry M. Freidrichs for Employers Group, California Employment Law Council and California Chamber of Commerce as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Sullivan & Christiani, William B. Sullivan; Sullivan Law Group, William B. Sullivan and Eric K. Yaeckel for Real Party in Interest.

Marlin & Saltzman, Louis M. Marlin, Stephen P. O'Dell and Lynn Pierce Whitlock as Amicus Curiae on behalf of Real Party in Interest.

**OPINION**

**HALLER, J.**—Pamela Silva brought a wage and hour class action complaint against her former employer, See's Candy Shops, Inc. After certifying a class of current and former California employees, the trial court granted Silva's summary adjudication motion on four of See's Candy's affirmative defenses and entered an order dismissing the four defenses. In a writ petition, See's

Candy challenged the dismissal of two of the affirmative defenses. These defenses pertained to See's Candy's timekeeping policy that rounds employee punch in/out times to the nearest one-tenth of an hour (nearest-tenth rounding policy).

After we summarily denied the petition, the California Supreme Court granted See's Candy's petition for review and ordered this court to vacate its prior order and issue an order to show cause in the matter. We thereafter issued the order to show cause and the parties filed extensive writ briefing. We also granted requests by several amici curiae to file briefs in the matter.

We conclude See's Candy's petition has merit. Based on the factual record before it, the trial court erred in granting summary adjudication on the two affirmative defenses pertaining to See's Candy's nearest-tenth rounding policy. We order the court to vacate the summary adjudication order and enter a new order denying summary adjudication on See's Candy's 39th and 40th affirmative defenses. Our ruling leaves open the issue whether the parties will prevail in proving their various claims and defenses relating to See's Candy's nearest-tenth rounding policy and a related grace period policy.

## FACTUAL AND PROCEDURAL BACKGROUND

See's Candy uses a timekeeping software system, known as Kronos, to record its employee work hours. Employees are required to "punch" into the system (located in the back room of each See's Candy store) at the beginning and end of their shifts, as well as for lunch breaks. A Kronos punch shows the actual time (to the minute) when the employee punched into the system. During the relevant times, See's Candy calculated an employee's pay based on his or her Kronos punch times, subject to adjustment under two policies: (1) the nearest-tenth rounding policy and (2) the grace period policy.

Under the nearest-tenth rounding policy, in and out punches are rounded (up or down) to the nearest tenth of an hour (every six minutes beginning with the hour mark). The Kronos time punches are thus rounded to the nearest three-minute mark. For example, if an employee clocks in at 7:58 a.m., the system rounds up the time to 8:00 a.m. If the employee clocks in at 8:02 a.m., the system rounds down the entry to 8:00 a.m.

Under the separate grace period policy, employees whose schedules have been programmed into the Kronos system may voluntarily punch in up to 10 minutes before their scheduled start time and 10 minutes after their scheduled end time. Under See's Candy's rules, employees are not permitted to work during the grace period, but they are permitted to punch in early (or punch out late) and use the time for their own personal activities. Because See's

Candy assumes the employees are not working during the 10-minute grace period, if an employee punches into the system during the grace period, the employee is paid based on his or her scheduled start/stop time, rather than the punch time. In other words, Kronos time punches made during the grace period accurately show when the employee punched in or out, but they do not show the beginning or end of the employee's work shift, i.e., compensable time. If the employee performs work during that time, the manager must make a timekeeping adjustment. Generally, if the grace period rule is applied, the nearest-tenth rounding policy becomes irrelevant because the start and/or stop time will be exactly the employee's scheduled time and there will be no need to round down or up to the nearest tenth of an hour.

See's Candy employed Silva in a nonexempt hourly position from about 1993 to 2010. In October 2009, Silva filed a class action complaint. As amended, the complaint alleged See's Candy violated various California wage and hour laws, including by failing to: (1) pay for all work performed; (2) pay overtime compensation; (3) maintain lawful meal and rest period policies; (4) pay for each meal or rest period that was not provided; and (5) provide accurate itemized wage statements. Silva also alleged See's Candy's labor practices constituted an unfair business practice under Business and Professions Code section 17200 and violated Labor Code section 2698 et seq.[1]

The court thereafter certified a class of "All persons employed by See's Candy . . . in . . . California as non-exempt, non-union employees at any time . . . from October 20, 2005 to the present, with respect to Plaintiff's claims that See's time-stamping policies (rounding policy and grace period policy) are illegal under California law." The court certified the class on two separate issues: (1) "Whether class members suffered a loss of compensation when they clocked in and out on the Kronos timekeeping system utilized by See's [Candy] which rounded time to the nearest six minutes" (the nearest-tenth rounding policy), and (2) "Whether class members suffered a loss of compensation when they clocked in or out on the Kronos timekeeping system utilized by See's [Candy] during the 'grace period,' defined as up to ten minutes before their scheduled start times and up to ten minutes after their scheduled quitting times" (the grace period policy).

In its amended answer, See's Candy denied Silva's allegations and asserted 62 affirmative defenses, including defenses based on See's Candy's claim that: (1) any unpaid amounts are de minimis; (2) the nearest-tenth rounding policy is consistent with federal and state law; and (3) the grace period policy is lawful under federal and state law.

---

[1] All further statutory references are to the Labor Code unless otherwise specified.

Silva then moved for summary adjudication on four of See's Candy's affirmative defenses. Two of these defenses (10th and 41st) concerned See's Candy's claim that any unpaid wages based on off-the-clock claims or its rounding policies were "de minimis."[2] The other two challenged defenses (39th and 40th) encompassed See's Candy's claim that its nearest-tenth rounding policy is consistent with state and federal laws "permitting employers to use rounding for purposes of computing and paying wages and overtime" and that the nearest-tenth rounding policy did not deny Silva or the class members "full and accurate compensation." Silva *did not* move for summary adjudication on See's Candy's affirmative defense that its grace period policy is "lawful under both federal and California law."

In moving for summary adjudication on the nearest-tenth rounding defenses, Silva argued there is no California statutory or case authority allowing See's Candy to use a rounding policy, and its policy violates section 204, which generally requires an employer to pay an employee "All wages" every two weeks, and section 510, which requires an employer to pay an employee premium wages for "Any work" after eight hours per day or 40 hours per workweek.

To show the defenses lacked factual merit, Silva relied primarily on three paragraphs in a 2010 report by See's Candy's expert, Dr. Ali Saad, a labor economist and statistician, who was initially retained to analyze the impact of See's Candy's nearest-tenth rounding policy for purposes of the earlier class certification motion. Because the proposed class at that point consisted only of retail (and not administrative) employees, Dr. Saad analyzed only the retail employee time records.

In the portions of Dr. Saad's declaration relied upon by Silva, Dr. Saad concluded: "[From] October 2005 through March 2010 for all hourly [See's Candy] employees in California, . . . [¶] [t]he total impact of rounding actual time punches to the nearest tenth of an hour for all shifts worked . . . produced a *net surplus* of rounded over actual shifts of 2,230 employee work hours [which] . . . resulted in *a net economic benefit* to the employees as a group. . . . Per shift the rounded shifts exceeded actual shifts by on average .002 hours, which is equal to 0.12 minutes, or 7 seconds per employee, per shift." (Italics added.) However, for plaintiff Silva, Dr. Saad found an "aggregate shortfall" of .47 hours or 28 minutes, which he said "equates to a shortfall in the average rounded relative to actual shift of 2 seconds." Silva also relied on Dr. Saad's graph depicting the distribution of the difference in shift lengths calculated based on the original time punches and on the

---

[2] Because these defenses are not at issue in this writ proceeding, we do not discuss them further in this opinion.

rounded time punches. Dr. Saad concluded that the total difference "across the more than 860,000 shifts studied is 2,230 hours *in favor of employees.*" (Italics added.)

Silva additionally relied on the deposition testimony of Mary Ann Mazelin, designated by See's Candy as the person most knowledgeable. When asked whether See's Candy had performed any investigation to determine whether, using the rounding rules, the employees are paid for all the time they actually work, including overtime, Mazelin responded: "I am not aware. I do not believe See's has made any investigation, using your term, for that. However, I have done my own analysis for Pam Silva for the last year comparing actual time clocked in recorded by See's to what Kronos calculates and therefore she ends up being paid."

Silva also relied on exhibit N, which consisted of a series of charts which Silva said reflected that See's Candy's rounding practices resulted in her loss of $725 in wages. Silva did not include any foundational or authentication evidence explaining the nature of the charts, including who prepared them and/or the manner in which they were prepared.

In opposing the motion, See's Candy urged the court to adopt a federal regulation utilized by California's Division of Labor Standards Enforcement (DLSE) that allows employers to compute employee worktime by using a nearest-tenth rounding method "*provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.*" (29 C.F.R. § 785.48(b) (2012), italics added.) See's Candy argued that Silva had not met her summary adjudication burden under this rule, noting that Silva had not presented any competent evidence that the rounding method prevented the class members from being fully compensated for their work.

See's Candy alternatively argued that even if the court found Silva presented sufficient evidence to shift the burden of proof, the summary adjudication motion should be denied because there are triable issues of fact on its nearest-tenth rounding policy affirmative defenses. In support, See's Candy relied on Dr. Saad's 2010 report, in which Dr. Saad concluded that a majority of the employees had a small net gain from the nearest-tenth rounding policy and that "mathematically, over a period of time, rounded times and actual times would even out." See's Candy also presented Dr. Saad's updated report, which was consistent with his 2010 report, but expanded the period of coverage to April 2011 and also included hourly employees who worked in See's Candy's administrative office locations. In the report Dr. Saad included additional analysis supporting his finding that the nearest-tenth rounding policy was neutral over time, even when taking into

consideration California law providing a worker had the right to overtime pay after working an eight-hour day.

In his 2011 report, Dr. Saad stated that in analyzing the Kronos time records, he first applied See's Candy's grace period policy if the time records showed the employee punched in within 10 minutes before or after his or her scheduled start/stop times. In other words, if an employee punched in during this 10-minute period, Dr. Saad would assume the employee was *not* working during this time and instead was working from the scheduled start time or until the scheduled end time. In this circumstance, Dr. Saad assumed the employee would be paid from the scheduled start/end time and thus See's Candy would have no need to apply the nearest-tenth rounding policy because the employee's worktime would have started and/or ended precisely at the scheduled start/stop time.

Dr. Saad then computed the hours worked for each employee shift by comparing the actual (unrounded) time stamps and the rounded time stamps, and then determining the difference for each of the shifts. Based on this mathematical analysis, Dr. Saad found that with respect to the entire class, See's Candy's nearest-tenth rounding policy: (1) "is both mathematically and empirically unbiased"; (2) resulted in a total gain of 2,749 hours for the class members as a whole; and (3) "did not negatively impact employees' overtime compensation" as neither employer nor employee benefited with respect to overtime pay.

Breaking down the 2,749-hour net gain for the class members as a whole, Dr. Saad prepared a chart showing that as a result of See's Candy's nearest-tenth rounding policy: 59.1 percent of the class (5,335 employees) had a net gain; 33 percent of the class (2,982 employees) had a net loss; and 7.9 percent of the class (717 employees) had no change. Based on his analysis, Dr. Saad concluded that See's Candy's nearest-tenth rounding policy is not "biased against employees in any way. . . . From a mathematical perspective . . . the methodology of rounding to the nearest tenth of an hour for pairs of punches is exactly neutral. The fact that the results came out in favor of the employees in this data is meaningless—the extremely small excess amount could have been a minutely small shortfall with a different sample of data." (Italics omitted.)

In his 2011 report, Dr. Saad also modified his earlier conclusion with respect to plaintiff Silva based on his analysis of her entire employment period and not just the class period, and found that Silva was fully compensated for all of her worktime. Specifically, Dr. Saad found: (1) Silva received a net benefit of five seconds per shift because of the nearest-tenth rounding policy for a total net benefit of 111 minutes, which out of 10,000 hours is

essentially equivalent to zero, and (2) Silva had a net negative of 3.6 seconds of overtime credited, which Dr. Saad said effectively equals zero.

In addition to Dr. Saad's reports, See's Candy presented evidence that it maintained a policy prohibiting employees from performing any work during the grace period, the employees were periodically reminded of this policy, and employees were told that if they worked during this time they must notify the manager who would manually add time to the employee's Kronos records. See's Candy also presented declarations from numerous employees, each of whom explained that he or she was aware of the grace period policy, understood that the decision to use the policy is "always voluntary," and described the types of personal activities in which he or she engaged during this period, including using the restroom "to do my makeup or hair," going to the post office to drop off personal mail, "go[ing] across the street to the [drugstore]," and "play[ing] games on my cell phone."

See's Candy also asserted numerous objections to Silva's evidence, including to exhibit N, claiming the exhibit lacked foundation and authentication and was hearsay.

In reply, Silva argued primarily that the trial court should grant summary adjudication on the nearest-tenth rounding affirmative defenses because See's Candy has now admitted that its time records are "inaccurate." In support, she directed the court to one of See's Candy's responses to her statement of undisputed facts. Specifically, Silva's undisputed fact No. 18 stated: "**Kronos time records are <u>accurate</u>**," citing the deposition testimony of See's Candy's human resources director, who said that Kronos time records are accurate. In its response, See's Candy wrote: "**Disputed**. Clockings made during the grace period accurately show when the employee punched in or out, but do not show the beginning and end of the employee's shift, *i.e.*, compensable time. Hours worked are not necessarily reflected in the time between two punches." Based on this response explaining See's Candy's grace period policy, Silva argued that See's Candy's time records were "inaccurate" and See's Candy has now admitted violating California law because it is a violation of California law to maintain "inaccurate Time Records."

The court issued a tentative ruling in Silva's favor based in part on the court's view that See's Candy had admitted its time records were "inaccurate" and that See's Candy did not show the class members were compensated for all time subject to its control.

At the hearing, See's Candy's counsel argued that it never admitted the time records were inaccurate—it had merely acknowledged that employee compensation was calculated based on grace period policies rather than actual

punch in/out times. Counsel also reminded the court that Silva had presented no evidence showing the class members had worked during the grace period, and See's Candy had presented evidence showing that the employees did not work and were not under the employer's control during the grace periods.

In its final ruling, the court found in *See's Candy's favor*, concluding that Silva did *not* meet her summary adjudication burden and stating that Silva failed to establish that employee time was rounded or how it was rounded, and if so whether Silva and other class members were not compensated for all worktime. The court alternatively found that even if the burden shifted, See's Candy met its burden to show triable issues of fact with respect to its nearest-tenth rounding affirmative defenses.

Silva thereafter moved for reconsideration based on claimed "New Law" and "New Facts." With respect to the new law, Silva relied primarily on the recently filed decision in *Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191 [127 Cal.Rptr.3d 185, 254 P.3d 237], in which the high court (in response to a certified question from the Ninth Circuit) held that California's overtime provisions apply to nonresident plaintiffs' claims for compensation for work performed in California for California employers. Plaintiffs also relied on *Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115 [127 Cal.Rptr.3d 883], for its discussion of well-settled statutory interpretation principles. (*Id.* at p. 121.)

With respect to the new facts, Silva produced an expert declaration based on alleged newly produced employee time records. In the declaration, Dr. Thomas Thompson, a research engineer, stated that based on his analysis of See's Candy's time records from approximately October 20, 2005, through March 2010, class members lost a total of $1,411,595.54 based on the nearest-tenth rounding policy *and* the grace period policy. In reaching this conclusion, Dr. Thompson, unlike Dr. Saad, did not separate out the grace period time adjustments, and instead apparently *assumed* each and every employee was working during the grace period and was not paid for that time. Thus, if an employee punched in at 7:55 a.m. and spent the next five minutes solely on personal activities under the grace period rules, Dr. Thompson would have calculated this time as five minutes of unpaid earned wages.

See's Candy argued there was no legal or factual basis for a reconsideration, and objected to Dr. Thompson's declaration on numerous substantive and evidentiary grounds, including that Dr. Thompson failed to analyze the nearest-tenth policy separately from the grace period policy.

During the hearing on the reconsideration motion, Silva's counsel reasserted that See's Candy had admitted its records were "inaccurate" and

argued "an employer cannot benefit from breaking the law here." Silva's counsel also argued that rounding is permitted under California law as long as the employer "perform[s] a mini actuarial process" every two weeks to ensure that every employee received compensation for his or her unrounded time. But with respect to See's Candy's grace period policy, Silva's counsel acknowledged that the grace period rules raised separate issues, and See's Candy's grace period policy was *not* before the court on the summary adjudication motion.[3]

The court then entered its final order *granting* Silva's reconsideration motion and *granting* summary adjudication *in Silva's favor* on each of the four challenged affirmative defenses. With respect to the 39th and 40th (nearest-tenth rounding policy) affirmative defenses, the court gave several reasons for its ruling. First, the court stated "that based on See's admission that its time records are inaccurate, See's has violated California law and summary adjudication is appropriate." The court explained that "California law requires See's to retain accurate time records" and the "United States Supreme Court has long held that [an] employer may not benefit from inaccurate time records." Second, the court stated it "agrees with [Silva] that [See's Candy] failed to sufficiently address the plain language of Labor Code section 204. [¶] As See's has not rebutted the 'plain language' of the statute—Labor Code section 204 requiring the payment of all wages every two weeks—the 39th [and 40th] affirmative defenses are not proper defenses." Third, the court found that "See's does not (and cannot) dispute that the federal rounding standard requires payment for all work time" and "[Silva] establish[ed] that See's does not dispute that they have provided no proof of 'Full payment' as to Class members."

See's Candy filed a writ of mandate petition challenging the trial court's summary adjudication order with respect to its 39th and 40th affirmative defenses.

## DISCUSSION

### I. *Summary Adjudication Standard*

When a plaintiff moves for summary adjudication on an affirmative defense, the court shall grant the motion "*only* if it *completely disposes*" of

---

[3] In this regard, Silva's counsel said: "There was some reference to grace periods. That's not at issue, Your Honor. This is [a motion for summary adjudication on certain] affirmative defenses. [¶] I'll state for the record that See's [Candy] still has the ability to raise a grace period issue. I don't think it's controlling. I think it goes against the operative California law . . . . But we're not asking this court to take out any argument regarding grace periods. That's not at issue."

the defense. (Code Civ. Proc., § 437c, subd. (f)(1), italics added.) The plaintiff bears the initial burden to show there is no triable issue of material fact as to the defense and that he or she is entitled to judgment on the defense as a matter of law. In so doing, the plaintiff must negate an essential element of the defense, or establish the defendant does not possess and cannot reasonably obtain evidence needed to support the defense. (See *Securitas Security Services USA, Inc. v. Superior Court, supra,* 197 Cal.App.4th at pp. 119–120; Code Civ. Proc., § 437c, subd. (f); see also *Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1726–1727 [22 Cal.Rptr.2d 781].)

If the plaintiff does not make this showing, " 'it is unnecessary to examine the [defendant's] opposing evidence and the motion must be denied.' " (*Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 950 [139 Cal.Rptr.3d 464].) " 'However, if the moving papers establish a prima facie showing that justifies a [ruling] in the [plaintiff's] favor, the burden then shifts to the [defendant] to make a prima facie showing of the existence of a triable material factual issue.' " (*Ibid.*)

On appeal we conduct a de novo review, applying the same standard as the trial court. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 [225 Cal.Rptr. 203].) Our obligation is " ' "to determine whether issues of fact exist, not to decide the merits of the issues themselves." ' " (*Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1228 [63 Cal.Rptr.2d 422].) We must " 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493]; see *Rehmani v. Superior Court, supra,* 204 Cal.App.4th at p. 951.) Summary adjudication is a drastic remedy and any doubts about the propriety of summary adjudication must be resolved in favor of the party opposing the motion. (See *Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 304 [49 Cal.Rptr.3d 52].)

## II.   *Legal Standard for Evaluating a Rounding Claim Under California Law*

The court certified a class on Silva's claim that See's Candy's nearest-tenth rounding policy violated the employees' rights to full compensation for work performed. In its 39th and 40th affirmative defenses, See's Candy alleged this policy was consistent with federal and state law permitting employers to use rounding for purposes of computing and paying wages and that it complied with state and federal requirements for rounding employee worktime. In moving for summary adjudication on these defenses, Silva argued that the nearest-tenth rounding policy violated California law because the evidence

showed it precluded employees from obtaining full compensation in their twice-monthly paychecks. In countering this argument, See's Candy presented evidence to show that during the relevant class period the employees were fully compensated for all of their work.

Before addressing the parties' specific factual contentions, it is necessary to determine the appropriate legal standard under which to analyze these facts. Although California employers have long engaged in employee time-rounding, there is no California statute or case law specifically authorizing or prohibiting this practice. Absent specific binding authority under California law, See's Candy argues that it is appropriate for this court to adopt the federal regulatory standard, which is also used by the DLSE (the state agency charged with enforcing wage and hour laws), and allows rounding if the employees are fully compensated "over a period of time." (29 C.F.R. § 785.48(b) (2012).) Silva counters that this federal/DLSE rule violates California statutes and rounding should be permitted only if the employer "unrounds" every two weeks to ensure full compensation. For the reasons explained below, we conclude the federal/DLSE standard is the appropriate standard.

About 50 years ago, the United States Department of Labor (DOL) adopted a regulation under the Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.) permitting employers to use time-rounding policies under certain circumstances (DOL rounding regulation). (29 C.F.R. § 785.48(b) (2012); see *Alonzo v. Maximus, Inc.* (C.D.Cal. 2011) 832 F.Supp.2d 1122, 1126 (*Alonzo*).) The regulation states: "It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. *For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.*" (29 C.F.R. § 785.48(b) (2012), italics added.)

As long interpreted by the federal courts, this "regulation permits employers to use a rounding policy for recording and compensating employee time as long as the employer's rounding policy does not 'consistently result[] in a failure to pay employees for time worked.' " (*Alonzo, supra,* 832 F.Supp.2d at p. 1126.) "[A]n employer's rounding practices comply with [the DOL rounding regulation] if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment." (*Ibid.*; accord, *East v. Bullock's Inc.* (D.Ariz. 1998) 34 F.Supp.2d 1176, 1184; *Gillings v. Time*

*Warner Cable LLC* (C.D.Cal., Mar. 26, 2012, No. CV 10-5565-AG(RNBx)) 2012 WL 1656937; *Adair v. Wisconsin Bell, Inc.* (E.D.Wis., Sept. 11, 2008, No. 08-C-280) 2008 WL 4224360; *Contini v. United Trophy Mfg., Inc.* (M.D.Fla., June 12, 2007, No. 6:06-cv-432-Orl-18UAM) 2007 WL 1696030.) On the other hand, an employer's rounding policy violates the DOL rounding regulation if it "systematically undercompensate[s] employees" (*Alonzo, supra,* 832 F.Supp.2d at pp. 1126–1127), such as where the defendant's rounding policy "encompasses only rounding down." (*Eyles v. Uline, Inc.* (N.D.Tex., Sept. 4, 2009, No. 4:08-CV-577-A) 2009 WL 2868447, p. *4 (*Eyles*); see *Austin v. Amazon.Com, Inc.* (W.D.Wn., May 10, 2010, No. C09-1679JLR) 2010 WL 1875811, p. *3; *Chao v. Self Pride, Inc.* (D.Md., June 14, 2005, No. Civ. RDB 03-3409) 2005 WL 1400740, p. *6.)

Although there are no California reported decisions holding the federal standard applies under California law, the agency empowered to enforce California's labor laws (DLSE) has adopted the federal regulation in its manual (DLSE Enforcement Policies and Interpretations Manual (2002 rev.) (DLSE Manual)). Specifically, the DLSE Manual provides: "The Division utilizes the practice of the [DOL] of 'rounding' employee's hours to the nearest five minutes, one-tenth or quarter hour for purposes of calculating the number of hours worked pursuant to certain restrictions . . . . [¶] . . . There has been [a] practice in industry for many years to follow this practice, recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted by DLSE, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."[4] (DLSE Manual, §§ 47.1, 47.2, citation omitted.)

■ Statements in the DLSE Manual are not binding on the courts because the rules were not adopted under the Administrative Procedure Act (Gov. Gode, § 11340 et seq.). (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 568–577 [59 Cal.Rptr.2d 186, 927 P.2d 296]; see *Marin v. Costco Wholesale Corp.* (2008) 169 Cal.App.4th 804, 815 [87 Cal.Rptr.3d 161].) However, the statements in the manual may be considered for their persuasive value. (See *United Parcel Service Wage & Hour Cases* (2010) 190 Cal.App.4th 1001, 1011 [118 Cal.Rptr.3d 834]; *Isner v. Falkenberg/Gilliam & Associates, Inc.* (2008) 160 Cal.App.4th 1393, 1399 [73

---

[4] The DLSE Manual also contains separate provisions authorizing employers to use voluntary grace periods unless the employee is either performing work during the period or has been directed by the employer to be on the premises. (See DLSE Manual, §§ 47.2.2, 47.2.2.1.)

Cal.Rptr.3d 433]; see also *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1029, fn. 11 [139 Cal.Rptr.3d 315, 273 P.3d 513] (*Brinker*).)

Citing the DLSE Manual, one federal district court recently found that the DOL rounding standard applied to an employee's time-rounding challenge brought under California law. (See *Alonzo, supra,* 832 F.Supp.2d. at pp. 1126–1127.) Although the parties stipulated that the DOL rounding regulation governs the case, the court also indicated its agreement that the federal regulation is the applicable standard under California law. (*Id.* at p. 1127 & fn. 3.) The *Alonzo* court explained that the federal standard has been expressly adopted by the DLSE and the adoption of the federal standard is "consistent with . . . the practice of California courts to look to [federal law] as guidance for interpreting analogous provisions of California law . . . ." (*Id.* at p. 1127, fn. 3; accord, *Gillings v. Time Warner Cable LLC, supra,* 2012 WL 1656937 at p. *5 [rounding practices neutral over time "do not violate California labor law since their net effect does not withhold wages"].)

We agree with the *Alonzo* court. In the absence of controlling or conflicting California law, California courts generally look to federal regulations under the FLSA for guidance. (*Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 903 [32 Cal.Rptr.3d 373].) The policies underlying the federal regulation—recognizing that time-rounding is a practical method for calculating worktime and can be a neutral calculation tool for providing full payment to employees—apply equally to the employee-protective policies embodied in California labor law. Assuming a rounding-over-time policy is neutral, both facially and as applied, the practice is proper under California law because its net effect is to permit employers to efficiently calculate hours worked without imposing any burden on employees. (See *Gillings v. Time Warner Cable LLC, supra,* 2012 WL 1656937 at p. *5.)

Moreover, as the DLSE and several amici curiae have noted, the rounding practice has long been adopted by employers throughout the country. Under these circumstances, "it is reasonable for the court to construe the requirements of the [California] wage law in a manner consistent with [the] FLSA. To hold otherwise would preclude [California] employers from adopting and maintaining rounding practices that are available to employers throughout the rest of the United States." (*East v. Bullock's Inc., supra,* 34 F.Supp.2d at p. 1184 [applying DOL regulation to Arizona law that is silent on rounding issue].)

As her main argument opposing the federal standard, Silva argues that the federal regulation is inconsistent with section 204 and thus violates California law.

Section 204 imposes an obligation of timely payment of wages upon California employers and provides rules for scheduling wage payments.[5] Specifically, for most employees, section 204 requires payment of wages twice during a calendar month, and an employer is subject to penalties for violating section 204. (§§ 204, subd. (a), 210.) Silva contends that because section 204 states that "*All* wages [(other than certain specified exceptions)] . . . are due and payable twice during each calendar month . . . ," this means that employers may lawfully use the rounding method only if they engage in a "mini actuarial process at the time of payroll" and reconcile the rounding with actual time punches every two weeks.[6] (Italics added.)

■ Silva's argument is unpersuasive under the plain language of section 204. Read in context, the reference to "All wages" in section 204, subdivision (a) pertains to the timing of wage payments and not to the manner in which an employer ascertains each employee's worktime. (See *Hadjavi v. CVS Pharmacy, Inc.* (C.D.Cal., Sept. 22, 2010, No. CV 10-04886 SJO (RCx)) 2010 WL 7695383, p. *2 [§ 204 "deals solely with the timing of wages and not whether these wages were paid"].) As observed by the

---

[5] Section 204 states: "(a) All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month. However, salaries of executive, administrative, and professional employees of employers covered by the Fair Labor Standards Act, as set forth pursuant to Section 13(a)(1) of the Fair Labor Standards Act, as amended through March 1, 1969, in Part 541 of Title 29 of the Code of Federal Regulations, as that part now reads or may be amended to read at any time hereafter, may be paid once a month on or before the 26th day of the month during which the labor was performed if the entire month's salaries, including the unearned portion between the date of payment and the last day of the month, are paid at that time. [¶] (b) (1) Notwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. [¶] (2) An employer is in compliance with the requirements of subdivision (a) of Section 226 relating to total hours worked by the employee, if hours worked in excess of the normal work period during the current pay period are itemized as corrections on the paystub for the next regular pay period. Any corrections set out in a subsequently issued paystub shall state the inclusive dates of the pay period for which the employer is correcting its initial report of hours worked. [¶] (c) However, when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees. [¶] (d) The requirements of this section shall be deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven calendar days following the close of the payroll period."

[6] Silva claims that "most employers" who use a rounding method engage in this reconciliation practice every two weeks. There is no evidence in the record supporting this claim. Moreover, as See's Candy points out, requiring an employer to engage in such a process would essentially make rounding unnecessary.

California Supreme Court more than 70 years ago, "the sole purpose of [section 204] is to require an employer of labor who comes within its terms to maintain two regular pay days each month, within the dates required in that section." (*In re Moffett* (1937) 19 Cal.App.2d 7, 13 [64 P.2d 1190].) "Despite section 204's use of the word 'wages,' section 204 does not provide for the payment of any wages nor create any substantive right to wages. The only right furthered by the section is the timely payment of wages." (*Singer v. Becton, Dickinson and Co.* (S.D.Cal., July 25, 2008, No. 08cv821 IEG (BLM)) 2008 WL 2899825, p. *3.) In asserting her argument, Silva improperly isolates the phrase "All wages" and fails to read it within the statutory context. " ' "The meaning of a statute may not be determined from a single word or sentence . . . ." ' " (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 544–545 [132 Cal.Rptr.2d 165].)

Moreover, Silva's contention has a false premise—that using unrounded figures within a finite time period is the only way to measure "All" earned wages. (§ 204, subd. (a).) Fundamentally, the question whether *all* wages have been paid is different from the issue of how an employer calculates the number of hours worked and thus *what wages are owed*. Section 204 does not address the measurement issue. The Legislature has amended section 204 since the DLSE adopted the federal rounding regulation, and has never indicated that the state agency's adoption of the federal rounding rule is inconsistent with its statutory provision.

Additionally, the notion that the rounding regulation is consistent with federal law but inconsistent with state law because of California's twice-monthly wage timing statute ignores the fact that under federal law—as well as most state laws—the employer is subject to some form of a payment deadline. (See *Rogers v. City of Troy* (2d Cir. 1998) 148 F.3d 52, 55 ["Although the FLSA does not explicitly require that wages be paid on time, the courts have long interpreted the statute to include a prompt payment requirement."]; see also 29 C.F.R. § 778.106 (2012) [requiring that all overtime wages be paid on the employee's regular payday].)

In urging us to reject the DOL rounding regulation, Silva also relies on section 510, subdivision (a), which provides: "*Any work* in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." (Italics added.) However, as with section 204, this code section has nothing to do with rounding or calculating time. Rather this provision sets the multiplier for the rate at which "Any" overtime work must be paid. (§ 510, subd. (a).)

Silva contends that because under California law—and not federal law—the rate of compensation increases past the eight-hour mark, the DOL

rounding standard can never be neutral because "a gain of 3 minutes of Regular Time is valued less than a loss of 3 minutes of Overtime."

Under California's overtime law, an employer must pay the overtime pay rate for work in excess of eight hours in one workday and in excess of 40 hours in one workweek; whereas the federal rule generally imposes the overtime pay rate only for work in excess of 40 hours in a workweek, and not for the amount of work performed per day. (§ 510, subd. (a); 29 U.S.C. § 207(a)(1), (2); see *Huntington Memorial Hospital v. Superior Court, supra*, 131 Cal.App.4th at p. 899 & fn. 1.) However, this difference does not show that rounding under the DOL rounding regulation will always burden the employee under California law. Even under the FLSA's 40-hour overtime rule, the rounding rules have an impact on overtime—it is merely a different degree of impact. There is no analytical difference between rounding in the context of daily overtime and rounding in the context of weekly overtime. Additionally, the FLSA contains various daily overtime rules applicable to certain industries, and none of these contain any restriction on rounding. (See 29 U.S.C. § 207(j), (m)(1).) Moreover, as reflected in Dr. Saad's expert declaration, rounding will not necessarily affect an employee's wages in the long run even when considering California overtime pay rules. As discussed below, the issue whether California's overtime rules mean a rounding rule is biased against employees is a factual issue and not a legal one.

In this regard, Silva's reliance on language in *Sullivan v. Oracle Corp., supra*, 51 Cal.4th 1191 is misplaced. *Sullivan* resolved issues concerning the scope of California overtime and statutory unfair competition laws as applied to work performed by nonresidents for a California-based employer within and outside the state. (*Id.* at p. 1194.) In addressing these certified issues, the high court noted that California's overtime law (§ 510, subd. (a)) "declares simply that '[a]*ny work*' in excess" of the statutory time period must be compensated at the premium rate and the overtime laws apply to " '*all individuals*' employed in this state." (*Sullivan, supra*, at p. 1197, italics in *Sullivan*.) The *Sullivan* court also emphasized the important public policies served by our state's overtime laws. (*Id.* at p. 1198.)

We agree with Silva that under *Sullivan* a California employer generally must pay *all* employees, including nonresident employees working in California, state overtime wages unless the employee is exempt. But the specific issue raised by Silva is whether sections 204 and 510 prohibit rounding unless all unrounded sums are paid to the employees on a two-week basis. *Sullivan* did not address this issue. "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the

court, and an opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)

■ Silva also relies on two other recent California Supreme Court decisions that are fully consistent with our conclusion. (See *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244 [140 Cal.Rptr.3d 173, 274 P.3d 1160]; *Brinker, supra,* 53 Cal.4th 1004.) Silva cites *Kirby* for its discussion of long-established statutory construction rules requiring a focus on a statute's " ' "plain" ' " meaning and the application of a " 'commonsense' " statutory interpretation. (*Kirby, supra,* at p. 1250.) ■ She cites *Brinker* for its reaffirmance of well-settled principles that wage and hour rules must be interpreted to promote employee rights and protect their interests, wage orders are entitled to " 'extraordinary deference,' " and an employer has an important obligation to keep accurate time records. (*Brinker, supra,* at pp. 1026, 1027; *id.* at p. 1053, fn. 1 (conc. opn. of Werdegar, J.).) We agree with the principles expressed in *Kirby* and *Brinker,* and to the extent they are relevant here, we have applied them in this case.

III. *Analysis*

■ Relying on the DOL rounding standard, we have concluded that the rule in California is that an employer is entitled to use the nearest-tenth rounding policy if the rounding policy is fair and neutral on its face and "it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." (29 C.F.R. § 785.48(b) (2012); see DLSE Manual, *supra,* §§ 47.1, 47.2.) Applying this legal standard, we turn to address whether the parties met their summary adjudication burdens with respect to the 39th and 40th affirmative defenses alleging that See's Candy's nearest-tenth rounding policy was consistent with California law.

Silva had the initial burden. To show no triable issues of fact and that she was entitled to judgment as a matter of law, Silva relied primarily on Dr. Saad's 2010 report (which evaluated only retail shop employees). However, in that report Dr. Saad determined that rounding to the nearest tenth of an hour was neutral over time and that shop employees were in fact overpaid by seven seconds per shift. As the trial court initially found, this evidence did not meet Silva's burden to show the rounding policy did not fully compensate the employees over time. In moving for reconsideration, plaintiff produced her expert's report, in which Dr. Thompson concluded that the employees lost a total of $1,411,595.54 from 2005 through 2010 based on See's Candy's rounding policy. However, this conclusion was based on the assumption that

each and every employee who punched in or out during the grace period was working but was not paid for that time. Because Silva presented no evidence to support this assumption, Dr. Thompson's conclusions were invalid to show whether the nearest-tenth rounding policy resulted in a loss to employees. (See *Alonzo, supra,* 832 F.Supp.2d at p. 1128 [employee's reliance on time records improper where employee did not present foundational evidence addressing whether employees were working during the grace period].)

Moreover, even if Dr. Thompson's report satisfied Silva's burden to show she and all the other class members were not paid fully for their work because of the nearest-tenth rounding policy, See's Candy presented evidence creating a triable issue of fact. As detailed in the factual part, in his 2011 report, Dr. Saad concluded the nearest-tenth rounding policy was "both mathematically and empirically unbiased" and actually resulted in a total gain of 2,749 hours for the class members as a whole. Under this analysis, most of the class members, including Silva, were fully compensated for every minute of their time (including for overtime pay) and the majority was paid for more time than their actual working time.[7]

Based on Dr. Saad's report, See's Candy met its burden to show triable issues of fact regarding whether its nearest-tenth rounding policy was proper under California law because it was used in a manner that did not result over a period of time in the failure to compensate the employees for all the time they actually worked. (See 29 C.F.R. 785.48(b) (2012).)

In her brief opposing the writ petition, Silva does not focus on the issue whether the parties met their summary adjudication burdens regarding whether the class members suffered a loss from See's Candy's rounding policy. Instead, she devotes most of her brief to several related arguments, each of which we address below.

First, Silva strenuously argues, and the trial court found, that summary adjudication was proper because See's Candy admitted its time records were "inaccurate." This argument is unsupported on the factual record before us.

---

[7] Although a minority of the employees (33 percent) had a net loss of a minimal amount *during the class period,* it is questionable whether those employees would be entitled to a recovery for these wages *if* See's Candy establishes that *over time the rounding policy is neutral.* However, we need not address this legal issue because even assuming there was a basis for recovery for a portion of the class on these facts, a court cannot grant summary adjudication on part of a defense. (Code Civ. Proc., § 437c, subd. (f)(1).) If a cause of action contained within an affirmative defense is not shown to be barred in its entirety, the court cannot grant a plaintiff's summary adjudication motion. (See *McCaskey v. California State Automobile Assn.* (2010) 189 Cal.App.4th 947, 975 [118 Cal.Rptr.3d 34]; *Catalano v. Superior Court* (2000) 82 Cal.App.4th 91, 95–97 [97 Cal.Rptr.2d 842].)

Generally, employers are required to keep accurate information regarding when an employee begins and ends each work period. (See *Hernandez v. Mendoza* (1988) 199 Cal.App.3d 721, 727 [245 Cal.Rptr. 36].) In this case, the person designated by See's Candy as the most knowledgeable confirmed that See's Candy maintains accurate timekeeping information. In moving for summary adjudication, Silva relied on this testimony to assert that See's Candy's time records were accurate. However, in response to Silva's assertion, See's Candy wrote: "**Disputed**. Clockings made during the grace period accurately show when the employee punched in or out, but do not show the beginning and end of the employee's shift, *i.e.*, compensable time. Hours worked are not necessarily reflected in the time between two punches."

Based solely on this response in which See's Candy referred to its *grace period* policy, Silva argues (and the trial court found) that summary adjudication was proper because See's Candy has now admitted violating California law by maintaining inaccurate time records. The argument is without merit.

See's Candy's grace period policy allows employees who have work schedules programmed into Kronos to clock in up to 10 minutes early and clock out up to 10 minutes late. With respect to *those* time punches, the scheduled time—and not the punch time—determines the employee's pay because the employer assumes (based on its formal policy) that the employee is *not working and not under its control* during this time.

But this difference between the punch time and the pay-calculation time during the grace period does not show See's Candy's time records are *inaccurate* for purposes of the summary adjudication motion. The parties agree (at least for purposes of this writ petition) that under California law a grace period (the time during which an employee punches in before his or her compensable pay is triggered) *is* allowed *if* the employee is not working or is not under the employer's control. To the extent an employee claims that he or she was not properly paid under this grace period rule, this claim raises factual questions involving whether the employee was in fact working and/or whether the employee was under the employer's control during the grace period.

In moving for summary adjudication, Silva did not produce *any* evidence showing the class members who clocked in during the grace period were working or were under the employer's control. In responding to the motion, See's Candy produced facts showing the employees were *not* working and were engaged in their own personal activities. Silva made no attempt to rebut

these facts in her reply. Instead, Silva's counsel confirmed at the reconsideration motion hearing that Silva was *not* challenging See's Candy's grace period policy in the pending motion and that the issue of the propriety of the policy would be litigated at a later time. (See fn. 3, *ante.*) This concession was consistent with the fact that the trial court had earlier certified the class on two separate and independent issues: (1) whether See's Candy's nearest-tenth rounding policy violated California law and (2) whether See's Candy's grace period policy violated California law.

Based on Silva's counsel's admission that Silva was *not* moving for summary adjudication on the grace period issue and based on the record showing a triable issue of fact as to whether the employees were working or were under the employer's control during the grace period, See's Candy's reference to its grace period policy in response to Silva's undisputed statement of facts does not constitute See's Candy's admission that its time records are "inaccurate" for purposes of evaluating the nearest-tenth rounding policy.

Silva has nonetheless devoted most of her briefing in this court to the inaccuracy/grace period issues. For example, she asserts that evidence of inaccurate time records "was (and is) overwhelming" *because* the grace period and rounding practices are "inextricably entwined" and See's Candy "failed to investigate whether its employees were actually 'under control' after being required to 'punch in.' " (Capitalization omitted.) In support, she discusses authority providing that employees who are in the mercantile industry must be paid if they are working *or* if they are " 'subject to the control of' " an employer. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 582 [94 Cal.Rptr.2d 3, 995 P.2d 139] (*Morillion*).) In defining "control," the *Morillion* court held employees were subject to the control of their employers when they are prevented from using " 'the time effectively for [their] own purposes.' " (*Id.* at p. 586.) Applying this rule, the California Supreme Court determined that agricultural employees who were "*required*" to ride an employer's buses to travel to and from the fields must be paid during the transportation time. (*Id.* at p. 578, italics added.) ·

Silva argues that as in *Morillion*, the See's Candy employees should have been paid during the grace period after they clocked in. However, she presented no evidence on whether the employees were prevented from using " 'the time effectively for [their] own purposes' " (*Morillion, supra*, 22 Cal.4th at p. 586), and See's Candy presented evidence that the employees did not work and were not under the employer's control during this time. This is a grace period issue. If the evidence later shows that the employees were

working or "under the control" of See's Candy during the grace period and they were not paid for this time, they may be entitled to recover those amounts in the litigation and any applicable penalties. But for purposes of this writ petition and based on the manner in which Silva presented her summary adjudication motion, the matter at issue is solely whether the nearest-tenth rounding policy was a potentially valid affirmative defense under the facts presented.

At oral argument, Silva's counsel repeatedly asserted that summary adjudication was proper because of the impact of See's Candy's "unique" grace period policy on its rounding policy and, when viewing both policies together, employees were not fully compensated for their work over time. The undisputed evidentiary record does not support this argument for purposes of Silva's summary adjudication motion.

Silva alternatively argues the court properly granted summary adjudication because an employee is "subject to a 'progressive discipline policy' " when he or she is tardy. Silva relies on a provision in See's Candy's employee manual stating: "Regular attendance is expected of every employee. Each employee is expected to be in the shop and ready to work at his or her starting time. Repeated tardiness or absences will not be tolerated." Under this policy, an employee's tardiness may be "subject to discipline," which can "in some instances" involve termination.

These rules do not show See's Candy's *rounding policies* result in an employee being unfairly disciplined. There was no evidence the discipline policy was ever applied to any employee because he or she was a few minutes late. Moreover, there is no evidence that See's Candy uses the rounded time (as opposed to the clocked-in time) when applying its tardiness policy. If the nearest-tenth rounding policy is neutral, and the tardiness policy is based solely on the actual punch time, on the record before us there is no basis for finding that See's Candy unfairly benefits from the rounding policy because of the discipline policy.

In support of her argument, Silva cites *Austin v. Amazon.Com, Inc., supra,* 2010 WL 1875811. However, *Austin* was a pleading case in which the district court found the plaintiff stated a cause of action by alleging that the employer's rounding policy was unfair as applied because the employer used the rounding method in a manner that did "not 'average[] out so that the employees are fully compensated for all the time they actually work.' " (*Id.* at p. *3.) The *Austin* court noted that the plaintiff's allegations show that the employer's discipline policy allows rounding when it benefits the employer,

but permits the employer to discipline the employee when the rounding does not work to the employer's advantage. (*Id.* at p. *2.)

The case before us is a summary adjudication and not a pleading case. Although the tardiness policy may be an issue in the litigation, there is no factual basis on the record before us supporting a legal conclusion that See's Candy's tardiness and related discipline policy necessarily means that the nearest-tenth rounding policy is unfair to, or biased against, the employees in the class.

Silva next argues that See's Candy's rounding practice "cannot be 'neutral' in that California possesses the '8-hour Overtime Rule' (as opposed to the [']40-hour Overtime Rule' under the FLSA)." We agree that California's overtime rules may mean that under a nearest-tenth rounding policy, an employee will not be fully compensated for the premium time if an employee works more than eight hours in one day. However, the issue whether this will result in undercompensation *over time* is a factual one. Silva did not present evidence showing the overtime rules meant that she and the other class members did not receive their full compensation. On the other hand, See's Candy presented a statistical study from its expert showing that *in this case* "the nearest tenth rounding policy did not negatively impact employees' overtime compensation." According to Dr. Saad, it was "virtually a wash" with respect to overtime pay, and "neither the employees nor See's [Candy] benefited from this rounding practice."

In this regard, Silva's reliance on *Alonzo, supra,* 832 F.Supp.2d 1122 and *Russell v. Illinois Bell Telephone Co.* (N.D.Ill. 2010) 721 F.Supp.2d 804 is misplaced. In *Alonzo,* the court *granted* the *employer's* summary judgment motion on the plaintiff's claim that the rounding policy did not fully compensate the employees for time worked. (*Alonzo, supra,* 832 F.Supp.2d at pp. 1126–1129.) In *Russell,* the sole matter before the court was the defendant's motion to decertify the class. In ruling on this motion, the district court noted that "If, as plaintiffs allege, [the employer's] time rounding and log out policies often caused plaintiffs to work unpaid overtime . . . then these company-wide practices may have resulted in unpaid overtime work." (*Russell, supra,* at p. 820.) However, the court specifically declined to "decide the merits of plaintiffs' [rounding] claim." (*Ibid.*)

Silva's reliance on *Eyles, supra,* 2009 WL 2868447 is likewise unhelpful. In *Eyles,* the employer moved for summary judgment on the plaintiff's claim

for unpaid wages based on the employer's rounding policy. (*Id.* at p. *1.) The evidence showed that the DOL had concluded the plaintiff was entitled to be compensated for unpaid overtime in the amount of $71.67. However, the employer argued it was nonetheless entitled to judgment as a matter of law because the DOL regulation permitted rounding. The district court found the defendant did not meet its burden on this issue, noting the federal regulation allows rounding only when the rounding " 'averages out so that employees are fully compensated for all the time they actually work' " and the "summary judgment evidence shows that defendant's practice encompasses only rounding down, so that over time, plaintiff was not paid for all the time actually worked." (*Id.* at p. *4.)

In this case, See's Candy's nearest-tenth rounding policy rounded both up and down from the midpoint, and See's Candy specifically presented evidence that over time the rounding policy did not result in a loss to the employees. Moreover, unlike *Eyles,* the employer here is not asking the court to find its policy was lawful as a matter of law; instead it is merely opposing plaintiff's motion for summary adjudication and asking the court to permit it to litigate its affirmative defense at trial.

Silva argues that this case is the same as *Eyles* because the *grace period* policy "is an 'automatic round down' " because it moves the clock back to the scheduled end time "with no corresponding 'round-up.' " However, as discussed, Silva did not move for summary adjudication based on the grace period defense, and instead sought only to eliminate See's Candy's affirmative defense based on its nearest-tenth rounding policy. This rounding policy *does* have an automatic rounding up and down from the midpoint. Moreover, the grace period policy is not a rounding policy per se; it is a policy under which an employer seeks to accurately pay employees from the time they begin and end work. The issue whether reciprocal rules are required to ensure fairness under a grace period policy is not before us.

For purposes of this summary adjudication motion, we reject Silva's unsupported suggestion that the federal regulation applies only to " 'time clocks' " and not to a software system such as Kronos.

### DISPOSITION

Let a writ of mandate issue commanding the superior court to vacate the portion of its summary adjudication order to the extent it granted summary

adjudication in plaintiff's favor on See's Candy's 39th and 40th affirmative defenses. See's Candy is entitled to recover its costs incurred in this writ proceeding.

Benke, Acting P. J., and Aaron, J., concurred.

A petition for a rehearing was denied November 26, 2012, and the petition of real party in interest for review by the Supreme Court was denied February 13, 2013, S207212.